IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**THERESA SCHMOHE,**

          **Plaintiff,**          **Case No.**

v.                                      **Judge**
                                      **Magistrate Judge**

**PARALLON ENTERPRISES, LLC**
                                      **JURY DEMAND**

          **Defendant.**

_____/

## COMPLAINT

Defendant Parallon Enterprises LLC ("Parallon") refused to accommodate long-term employee, Plaintiff Theresa Schmohe ("Ms. Schmohe"), due to her disability and then retaliated against her for requesting accommodation. In doing so, Parallon failed to enter into an interactive process with Ms. Schmohe to determine whether her disability could be accommodated. Parallon discriminated against Ms. Schmohe by subjecting her to stricter scrutiny due to her disability. Parallon also interfered with and retaliated against Ms. Schmohe for requesting and taking leave pursuant to the Family and Medical Leave Act. Thus, Ms. Schmohe brings claims of discrimination and retaliation under the Americans with Disabilities Act, the Tennessee Disability Act, and claims of interference and retaliation under the Family and Medical Leave Act.

## PARTIES

1. Plaintiff, Theresa Schmohe, ("Plaintiff" or "Ms. Schmohe") is a citizen and resident of White House, Robertson County, Tennessee, and a former employee of Defendant. Plaintiff worked at Defendant's Nashville, Tennessee location.

2. Defendant, Parallon Enterprises, LLC is a Tennessee limited liability company. Its registered agent for service of process is CT Corporation System, 300 Montvue Rd, Knoxville, TN

1

37919-5546.

3. At all material times, Defendant has been an employer as defined by the ADA, 42 U.S.C. § 12111.

4. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(g) and (h)(1).

5. At all material times, Defendant has been an employer as defined by the Tennessee Disabilities Act, T.C.A. § 8-50-103 ("TDA").

6. At all times material to this action, based on information and belief, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the previous years and is an "employer" as defined by the FMLA, 29 U.S.C. § 2601.

## JURISDICTION AND VENUE

7. This is an action for unlawful employment practices brought under the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") (Counts I - II) the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Counts III and IV), and the Family and Medical Leave Act 29 U.S.C. § 2601 (Count V).

8. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

9. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue for the charge and this action was commenced within 90 days of receipt of Notice of Right to Sue.

## FACTS

10. Plaintiff, Theresa Schmohe, was employed by Parallon in various positions starting in March 2008. Her most recent position was as a Financial Counselor.

11. Parallon terminated Ms. Schmohe on November 30, 2020.

12. Ms. Schmohe is a qualified individual with a disability under 29 C.F.R. §1630.2(h)(1). In particular, she has disorders which affects major life activities of breathing, walking, standing, kneeling, sitting, caring for oneself and working. Moreover, her disabilities affect the major bodily systems of the endocrine, reproductive, pulmonary, cardiovascular, circulatory, muscular, skeletal, and neurological systems.

13. Defendant Parallon is a premier revenue cycle partner which serves hospitals, physician practices and healthcare systems by collecting revenue. Annually, Parallon collects more than $51 Billion in revenue for its clients.

14. Defendant employs more than 50 employees at its Nashville, Tennessee location.

15. Plaintiff suffers from various disorders including cancer, diabetes, sciatica, arthritis, and hypertension. Ms. Schmohe is immunocompromised and often suffers from secondary infections, such as upper respiratory infections and chronic bronchitis, due to her suppressed immune system.

16. On or about October 23, 2020, Ms. Schmohe saw her doctor for fever, cough, and congestion and was diagnosed with an upper respiratory infection and prescribed antibiotics. Ms. Schmohe's doctor also excused her from work for three days during which time she was incapacitated. Ms. Schmohe produced the doctor's note to her employer.

17. When Ms. Schmohe returned to work after the three days off in October, 2020, she continued to experience sickness and began to experience dizziness, vertigo and lightheadedness

while at work.

18. Over the next few weeks, Ms. Schmohe followed up with her doctor on multiple occasions and continued to have the diagnosis of upper respiratory infection through January 15, 2021.

19. Ms. Schmohe's supervisor, Mr. Rodriguez, had written her up in the past for missing work due to illness, even when she had a doctor's excuse.

20. After she returned to work, in October 2020, Mr. Rodriguez called her into his office and told her that if she was sick, she should not have come to work. He then wrote her up for missing the three days, even though she had a doctor's excuse.

21. That same day, after receiving the discipline for taking days off, Ms. Schmohe contacted Parallon's third party leave administrator (TPA), Sedgwick, and requested medical leave. The third party advised her to start her leave that day and advised that they would send her paperwork. Ms. Schmohe requested for her leave to be backdated to October 23, 2020, to include the three days she had to be out of work due to her respiratory infection.

22. That same day, Ms. Schmohe advised her supervisors that she would be applying for medical leave pursuant to their policies and procedures.

23. Ms. Schmohe's doctor requested that she be given medical leave until November 30, 2020.

24. Ms. Schmohe went out on continuous medical leave.

25. Toward the end of her leave period, Ms. Schmohe was contacted by her supervisor and told that, although she was on leave, she had to call in every single day and report that she was not coming in.

26. When Ms. Schmohe returned to work on November 30, 2020, she found another

person sitting at her desk. She was told that she would be moving workstations. However, there was another person sitting at the other workstation as well. Ms. Schmohe's supervisor told her that he was unaware she was returning that day and that she should go home and he would speak with Human Resources.

27. Ms. Schmohe did as directed and returned home.

28. That same afternoon, her supervisor called her and told her due to her absences and her failure to call in every day that she was terminated.

29. The next day, on December 1, 2020, Ms. Schmohe received a call from Sedgwick customer service, the TPA, who informed her that her FMLA had been approved for the time that she was out sick, through November 30, 2020.

30. That same day, Ms. Schmohe received a letter from Sedgwick, via email, dated December 1, 2020, informing her that her FMLA was approved for October 22, 2020 through November 30, 2020, which encompassed the initial three days she was out sick and the subsequent sick leave.

31. Ms. Schmohe asked her Sedgwick Leave Advocate when Parallon was made aware that her leave was approved. The Leave Advocate told her that she had spoken with Parallon's Human Resources Liaison, Patrick, on November 24, 2020, and informed him of her return-to-work date of November 30, 2020, and he had approved the leave.

32. Ms. Schmohe contacted Laura Demote, Vice President of Human Resources, and left a voice mail requesting that she call her back and return her to her job. Ms. Demote never returned her call.

33. On or about December 18, 2020, Ms. Schmohe spoke with Gary Briggs in Human Resources who told her he would look into what happened. He never returned her call. Sometime

5

later, Ms. Schmohe called Mr. Briggs, and he told her that she had been terminated because she was a no-call-no-show.

34. Parallon failed and refused to return Ms. Schmohe to work after her FMLA leave and instead terminated her.

## Count I
## Violation of ADA/ADAAA- Disability Discrimination

35. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

36. Pursuant to the ADAAA, an individual is considered to have a disability if she has a physical impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

37. Plaintiff was a qualified individual with a disability as she had disorders that affected her endocrine, reproductive, pulmonary, cardiovascular, circulatory, muscular, skeletal, and neurological systems, and were impairments that substantially limited her in one or more major life activities.

38. Plaintiff was terminated because of her disability and/or in retaliation for her requests for the reasonable accommodation of time off, and/or because she took medical leave, and/or because she had a record of impairment, and/or because she was regarded as disabled.

39. Plaintiff could perform the essential functions of her job with an accommodation of medical leave. Plaintiff made a request for reasonable accommodation, including, but not limited to, medical leave for a discrete time period. Defendant failed to engage in an interactive process with Plaintiff to determine whether it could accommodate her; instead she was told to go home and take medical leave. Defendant failed and refused to return her to work after her medical leave. Defendant subjected her to strict scrutiny and required her to call in each day of her medical

6

leave, a requirement she had not been subjected to before and which other, non-disabled employee, were not subjected to.

40. Defendant failed and refused to engage in interactive process to determine what if any accommodations could be made for Plaintiff.

41. Plaintiff was discriminated against and eventually terminated because of her disability, request for a reasonable accommodation, and for utilizing such accommodation.

42. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

43. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, actual damages, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II
## Violation of ADAAA- Retaliation

44. Plaintiff restates and incorporates herein the foregoing paragraphs.

45. It is federal public policy and law under the Americans with Disabilities Act that employees must be able to exercise their rights without fear of reprisal or penalty from an employer.

46. Plaintiff engaged in protected activity under the ADA when she requested an accommodation of medical leave and requested to return to work. Such actions by the Plaintiff are statutorily protected activities under ADAAA.

47. In violation of the ADAAA, Defendant retaliated against Plaintiff by requiring her to call in every day of her leave and then by terminating her employment.

48. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

49. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, actual damages, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count III
## Violation of TDA- Disability Discrimination

50. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

51. Pursuant to the TDA, an individual is considered to have a disability if he or she has a physical or mental impairment that substantially limits one or more major life activities.

52. Plaintiff was a qualified individual with a disability.

53. Defendant discriminated against Plaintiff on the basis of her disability in violation of the TDA that culminated in her termination.

54. Plaintiff was discriminated against and eventually terminated because of her disability, her record of impairment and/or because it regarded her as disabled.

55. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

56. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count IV

### Violation of TDA- Retaliation

57. Plaintiff restates and incorporates herein the foregoing paragraphs.

58. It is the public policy and state law of Tennessee that employees must be able to exercise their rights under state law without fear of reprisal or penalty from an employer.

59. Plaintiff objected to and protested disability discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under TDA.

60. In violation of the TDA, Defendant retaliated against Plaintiff by terminating her employment in retaliation for exercising her rights under the TDA.

61. Defendant retaliated against Plaintiff because of her protected activity by taking adverse action against Plaintiff. As a result of Plaintiff's complaints and protests of disability discrimination in the workplace, Defendant took adverse employment actions against Plaintiff for a pretextual reason.

62. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

### Count V
### Violation of FMLA

63. Plaintiff restates and incorporates herein the foregoing paragraphs.

64. Defendant interfered with and retaliated against Plaintiff for taking FMLA protected leave.

65. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

66. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

67. Plaintiff was entitled to receive 12 weeks of FMLA leave to care for her own serious health condition.

68. Defendant subjected Plaintiff to disparate terms and conditions of employment after she requested and took FMLA, including but not limited to retaliating against her after she requested and took FMLA leave by terminating her.

69. Defendant interfered with Plaintiff's FMLA entitlement by terminating her prior to the exhaustion of 12 weeks of FMLA leave.

70. Defendant's actions constitute interference and retaliation violations of the FMLA.

71. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

72. Defendant's conduct harmed and caused damage to Plaintiff.

73. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits, insurance and reimbursement for medical costs due to the loss of her insurance;

3. Reinstatement and/or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Liquidated damages;

6. Punitive damages;

7. Attorneys' fees and expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which she may be entitled under the ADAAA, the TDA, FMLA and any other statutory or common law.

Respectfully submitted,

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR# 037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*